Nos. 2017-2423

United States Court of Appeals
For the Federal Circuit

QUEST INTEGRITY USA, LLC,
*Plaintiff-Appellant,*
v.

COKEBUSTERS USA, INC.,
*Defendant-Appellee.*

Appeals from the United States District Court for the District of Delaware
In Case No. 1:14-cv-01483-SLR, Judge Sue L. Robinson

# RESPONSE OF APPELLEE COKEBUSTERS USA INC. TO THE COURT'S SUA SPONTE ORDER OF FEBRUARY 21, 2019

Thomas M. Fulkerson
Fulkerson Lotz LLP
4511 Yoakum Blvd., Suite 200
Houston, Texas 77006
(713) 654-5888
tfulkerson@fulkersonlotz.com

Danielle J. Healey
Fish & Richardson, P.C.
1221 McKinney St., Suite 2800
Houston, Texas 77010
(713) 654-5310
healey@fr.com

*Counsel for Defendant-Appellee*
*Cokebusters USA Inc.*

## SUMMARY OF ARGUMENT

*Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.,* 890 F.3d 1024, 1031–35 (Fed. Cir. 2018) ("*Praxair"*) expanded the scope of "printed matter," holding that when "claim limitations directed to mental steps may attempt to capture informational content, they may be considered printed matter lacking patentable weight in an obviousness analysis." *Id.* at 1033. While Judge Newman concurred in the judgment, she wrote separately to point out and criticize the majority's "creation of a new printed matter doctrine…" *Praxair*, 890 F.3d at 1039. *Praxair* held for the first time that limitations claiming information for use in, or as used with, mental steps are unpatentable under the printed matter doctrine.

*Praxair* was decided after the lower court judgment, and even after the Appellee filed its brief in this case, giving Cokebusters no chance to specifically discuss it below. The application of *Praxair* to this appeal turns on a straightforward application of legal principles to the patent claims, and is a question of law.

Here, the limitations in the claims for processing data to create a display and display of information to allow an analyst to visually detect a problem in the furnace, are given no patentable weight in analyzing the on-sale bar. Since the only differences between the Norco sale and the claims of the '874 patent are how data is displayed, processed for display, or how a user can read and use it, the on-sale bar

was properly applied and the judgment should be affirmed for this and the reasons in Cokebusters' prior brief.

## I. Limitations for collection, analysis, display and use of data are not entitled to patentable weight

### A. The '874 Patent Claims a System and Method for Display of Data and Human Analysis of the Data

Figures 10A and 10B are "an exemplary embodiment of the method of the present invention…" that requires "the data analyst views and analyzes the display in order to identify overall trends in the inspection data and/or to visually detect problem areas within the furnace." '874 at col. 15, lns. 18-20, col. 16, lns. 10-13.

Quest cited claim 24 as an exemplary claim. Blue Brief at 2. It requires collecting, analyzing, and displaying inspection data for operator use in a mental process:

> A computer-readable medium having computer-executable instructions for performing a **method of displaying inspection data** collected from a furnace, wherein said furnace comprises a plurality of tube segments interconnected by a plurality of bends so as to allow stacking of at least a portion of said tube segments, said method comprising:
>
> **generating a plurality of data markers each of which identifies a location of a physical feature of said furnace;**
>
> **partitioning said inspection data at said data markers so as to correlate said inspection data to an appropriate one of said tube segments of said furnace**;
>
> **generating a display of at least a portion of said partitioned inspection data arranged to represent said physical geometry of a plurality of said tube segments** and **enable visual detection** of a problem area comprising one or more of said tube segments; and

**wherein said inspection data is collected by one or more devices** selected from the following group: an ultrasonic transducer, a laser profilometer, and combinations thereof.

"Display" refers to the presentation of the data on the substrate, not the substrate itself. See Appx 59-60. The media on which the display is presented could be a computer monitor ('874, col. 10, ln 59), a paper print out (e.g., '874 col. 15, ln 44, refers to "page"), or strip of paper (e.g. '874 col. 3, ln 55). In addition to Figs. 10A and 10B, the specification says twice that a data analyst can use the data to detect problems with "no more than a glance" using various displays. '874 col. 11, lns. 29, col. 15 ln 13.

The only difference between the Norco sale displays (analogous to '874, Fig. 3) and those now claimed go to the precise placement of the information in the display (scaling the data to a norm and "flipping" tube segments to reflect fluid flow). These changes in how the data is displayed or may be used by the analyst do not create a patentable distinction between the Norco sale images and the additional images claimed in the '874 patent. *Praxair*, 890 F.3d at 1039 (a patent cannot claim information merely by adding a mental step).

B. <u>The disputed limitations claim information as described in *Praxair*.</u>

The Court in *Praxair* held that a limitation is directed to printed matter if it "claims information." *Praxair*, 890 F.3d at 1033–34. Further, a limitation will claim information if it "incorporate[s] that information into a mental step . . . ." *Id.* In

*Praxair*, the Court refused to grant any patentable weight to a limitation that merely provided information and called for mental steps that used the information. *Id.* at 1029, 1032-33. "To hold otherwise would make the printed matter doctrine a dead letter, requiring no more than a 'think about it' step to give patentable weight to a claim limitation directed to information content." *Id*. at 1032-33. The Court reasoned that "adding an ineligible mental process to ineligible information still leaves the claim limitation directed to printed matter." *Id.; compare* '874 at Fig. 10A.

In claim 1 of the '112 patent in *Praxair*, the limitation required the presentation of data "sufficient to cause a medical provider . . . to elect" a treatment. *Id.* at 1029. So too here: as representative claim 24 and its "exemplary embodiment" in Figures 10A and 10B show, the display allows an analyst to use the data to visually detect problems in a furnace, then elect to replace piping as needed. Data is partitioned to generate a display on the monitor or other media so that it correlates to tube segments and allows the analyst to visually detect problem areas. As in *Praxair*, presenting the information (here, in a display) for use for a specific purpose by a human is coupling the information (inspection data) with a mental process.

Claims 30 (which adds a limitation for "composite data markers") and 40 (which adds a limitation for partitioning using "sensor data") fare no better than Claim 24. Both claims collect inspection data, analyze the inspection data, and then "generate a display of at least a portion of said partitioned inspection data arranged

to represent said physical geometry of a plurality of said tube segments…to enable visual detection [by the analyst]" of problems in the furnace. '874 at col. 19, ln 4-6, col 20, ln 32-36. These additional steps are merely alternative ways to collect, analyze, and display intangible information (done just as in the Norco report) so that the analyst may visually detect problems "at a glance" in the tubing portion of the furnace but are not patentable functions. *See, e.g.*, *Praxair*, 890 F.3d at 1032 ("[d]ata in its ethereal, non-physical form is simply information that does not fall under any of the categories of eligible subject matter"); *Elec. Power Grp, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("gathering and analyzing information of a specified content, then displaying the results . . . [is] directed towards an abstract idea." (emphasis added)).[1]

The application of the printed matter doctrine is a question of law. The controlling point is that the limitations describe these functions in each of the disputed claims by merely incorporating non-tangible information (inspection data), and arranging it for display to enable visual detection of problems "at a glance". *Compare Praxair*, 890 F.3d at 1033–34 (the printed matter doctrine applies to "a limitation that merely claims information by incorporating that information into a mental step"). *Praxair* expressly rejected any purported distinction based on the

[1] The *Praxair* dealt with claim construction, but recognized that the printed matter doctrine overlapped with Section 101, as well as 102 and 103. *Praxair*, 890 F.3d at 1032-33.

form or medium of the information at issue. *Id.* ("There is no meaningful distinction between claim limitations directed to written information . . . verbal information . . ., and mentally-processed information . . . .").

C. <u>The printed matter here lacks any functional relationship to the substrate on which it is applied.</u>

Nothing about the inspection data (*i.e.*, the printed matter) is functionally related to the substrate on which it is applied. The '874 patent does not even describe what kind of substrate the display is published on; it makes only a passing reference to use of a mouse, referring to a computer monitor, and a "page" referring to a print out. Nothing ties the inspection data to the functionality of these substrates.

Merely manipulating the underlying information to generate additional information (such as a chart) does not create a functional relationship to a substrate. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*758 F.3d 1344, (Fed.Cir.2014) at 1351 ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."). Similarly, no functional relationship to the substrate exists when the underlying information does not depend in any way on the medium of the substrate. *Praxair,* 890 F.3d at 1032 ("For example, *in Ngai*, 367 F.3d at 1339, there was no functional relationship between claimed instructions and a diagnostic kit, as the instructions 'in no way depend[ed] on the kit, and the kit [did] not depend on the' instructions."); *In re Marco Guldenaar Holding B.V.*, 911 F.3d

1157, 1161 (Fed. Cir. 2018)( "[T]he printed indicia on each die are not functionally related to the substrate of the dice.").

The invention claimed here functions independently from whether the information is displayed on a computer monitor, printed report or a strip chart. Likewise, nothing more than a generic computer is claimed so in each of the disputed claims, a system is used to collect, process and organize data for display, but the data does not manipulate, change, or have any other functional relationship with the computer or the substrate. As such, no functional relationship exists within the meaning of *Praxair* or other printed matter cases. *See, e.g.*, *id; In re Jie Xiao*, 462 F. App'x 947, 951 (Fed. Cir. 2011) (no functional relationship existed when "the claimed device can be used in the same way and for the same purposes with or without wild-card position labels"); *Kimberly-Clark, Inc. v. First Quality Baby Products, LLC*, 900 F. Supp. 2d 919, 925 (E.D. Wis. 2012), *aff'd*, 579 F. App'x 996 (Fed. Cir. 2014) (visual segmentation of wetness activated baby diaper image had no functional relationship to substrate).

## II. This Court Should Apply the Printed Matter Doctine in this Case

### A. <u>The printed matter doctrine should be considered in the context of the on-sale bar defense properly before the Court.</u>

The Court may look to any ground in the record that supports the district court's invalidity ruling, including the on-sale bar already before the Court. *E.g.*, *Kristar Enterprises, Inc. v. Revel Envtl. Mktg., Inc.*, 232 F.3d 914 at *3 (Fed. Cir.

2000) ("We may affirm the district court's judgment on any ground supported by the record"). The printed matter doctrine is not a stand-alone theory of invalidity, but rather part-and-parcel to any novelty analysis. *Praxair*, 890 F.3d at 1033 ("[M]any of our printed matter cases have arisen in the context of anticipation or obviousness"). In other words, the printed matter doctrine is not a claim or defense but a tool for analysis of how to interpret claim language or whether a claim is invalid or unpatentable. *See Id*. ("The printed matter doctrine thus raises an issue where the § 101 patent-eligibility inquiry and the § 102 and § 103 novelty and nonobviousness inquiries overlap."). Because the printed matter doctrine requires that the disputed limitations in each claim be given no patentable weight, the Court cannot factor them into the novelty analysis. Because the printed matter doctrine is an analytical tool and not itself an ultimate issue, there can be no waiver. *Kristar Enter.*, 232 F.3d at 914 at *3 ("We may affirm the district court's judgment on any ground supported by the record.").

B. Alternatively, the printed matter doctrine should be considered on appeal regardless of any alleged waiver.

Alternatively, even if the printed matter doctrine should have been raised below in some way, "what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121

(1976). As this Court held in *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995):

> An appellate court will consider an issue not presented below only if: (i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents "significant questions of general impact or of great public concern[;]" or (v) the interest of substantial justice is at stake.

Here, the printed matter doctrine is a pure question of law relying solely on the patent. *Praxair*, 890 F.3d at 1033 (analyzing the issue as a question of law). Second, since the question of law is resolved as a matter of law in light of claim language, the result under *Praxair* is beyond any doubt. Third, Cokebusters could not have argued this new change in the printed matter doctrine below. *Praxair*, 890 F.3d at 1039 (Newman, J., concurring only in the judgment) (arguing that the majority "creat[ed] . . . a new printed matter doctrine in today's jurisprudence"). Fourth, the application of *Praxair* and the expanded printed matter doctrine are questions of general public impact and/or of great public concern, since the ability to obtain patent protection and enforce patents are critical to the United States economy. In addition, or alternatively, reversal of the summary judgment after four years of litigation, would be a substantial injustice to Cokebusters.

## CONCLUSION & PRAYER

For these reasons, along with all those stated in Cokebusters' Red Brief, Defendant-Appellee Cokebusters USA Inc. respectfully requests an order affirming the judgment of the district court.

February 27, 2019

Respectfully submitted,

/s/ Thomas M. Fulkerson
Thomas M. Fulkerson
Wesley G. Lotz
Nicholas M. Brown
FULKERSON LOTZ LLP
4511 Yoakum Blvd., Suite 200
Houston, Texas 77006
(713) 654-5800
tfulkerson@fulkersonlotz.com

Danielle "DJ" Healey
FISH & RICHARDSON, P.C.
1221 McKinney Street, Suite 2800
Houston, Texas 77010
(713) 654-5310
healey@fr.com

*Counsel for Defendant-Appellee Cokebusters USA Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this February 27, 2019, filed the foregoing Response of Appellee using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

/s/ Thomas M. Fulkerson
Thomas M. Fulkerson